## Foster's Appeal.

1. A firm owned real estate purchased with firm funds and held as partnership property, one of the partners died; by arrangement with the survivor, and by order of the Orphans' Court, the real estate was sold to him for $25,500, at private sale by the administratrix; he to pay all the firm debts, the indebtedness of the decedent to the firm and his individual debts for which the firm was liable; $5500 of the purchase-money to be appropriated to his other debts. *Held*, that the remainder was to be distributed as real estate.

2. The general rule is that personal estate is to be first applied to pay a decedent's debts, even those with which his real estate is charged.

3. Where land is partnership stock, it never becomes personalty, even

[Foster's Appeal.]

during the continuance of the firm so as to give one partner power to dispose of the firm interest in it.

4. Land is not subject to the rule that each partner is agent of the firm.

5. Conversion is a doctrine of equity only and is admitted to produce equitable results.

6. Conversion is at an end when the purpose of the conversion is attained; the land becomes realty, although the proceeds are distributed as personalty.

7. Firm real estate is personalty for the purpose of paying firm debts and the advances of the partners before any goes to the partners or their separate creditors.

8. The time of reconversion is the moment the partnership is wound up and it is determined to be no longer partnership stock nor required for its purposes.

9. Meily v. Wood, 21 P. F. Smith 488, remarked on.

November 10th 1873. Before READ, C. J., AGNEW, SHARSWOOD, WILLIAMS and MERCUR, JJ.

Appeal from the Orphans' Court of *Allegheny county:* No. 165, to October and November Term 1872.

John Foster, of the county of Allegheny, died intestate in August 1871, leaving a widow, Belle D. Foster, and five minor children, of whom W. W. Young was appointed guardian ; administration of his estate was granted to the widow. At the time of his death he was an equal partner with Samuel M. Kier, in mining and selling coal.

In September 1872, the administratrix and guardian joined in a petition to the Orphans' Court, setting forth, amongst other things:—

5. That while in many instances the real estate belonging to the firm was conveyed to them as tenants in common, yet it was purchased with the money of the firm and held as partnership property.

6. The property consisted of forty-three different parcels, which were minutely set out in the petition by their description, source of title, mode of conveyance, &c.

7. That the said firm of Kier & Foster were at the time of the death of said John Foster, and are now, largely indebted for purchase of coal-lands and for other liabilities, requiring, to prevent loss, an immediate sale of the interest of said Foster in the said firm property, and that your petitioners have made great personal efforts to effect a sale thereof, but have hitherto been unable to do so.

8. That the said Samuel M. Kier has proposed to purchase the interest in said firm and in the property of said firm, real and personal, of the said John Foster, his late copartner, for the sum of $25,508.30, he, the said Samuel M. Kier, assuming to pay all the said John Foster's share of the indebtedness of the firm of Kier & Foster, and of unpaid purchase-money and liens upon said property, and of debts due to the said firm by the said Foster, including said Foster's individual notes endorsed with the firm name, said purchase to be made as of the 1st day of May, A. D.

1872, he the said Kier to fulfil all the contracts of the said firm for sales of lots to miners and others, and all other firm contracts, the said Kier to have advantage of the time which any of the debts of the said firm may be entitled to, and the right for nine months from the acceptance of his said offer, to use the firm name in the liquidation of the floating debt, the said sum of $25,508.30 to be paid and secured as follows, viz. : The sum of $5500 in cash upon the delivery of the deed, the balance to be paid, one-fourth in three years, one-fourth in four years, one-fourth in five years, and one-fourth in six years, with interest payable semi-annually from May 1st 1872, the said deferred payments to be secured by mortgage of the entire coal land owned by said Foster and by said Kier.

9. That owing to the fact that the said interest of the said Foster is undivided, and its liability for the debts of the said firm, your petitioners believe and represent, that it would be greatly to the advantage of all interested that the same should be sold at private, instead of public sale, and the proposition of the said Kier should be accepted, the price offered being, in the opinion of your petitioners, a better price than could be obtained at public sale; that the price offered is the actual value of the interest of said John Foster, upon the following valuations of the property and assets of the firm, deducting therefrom the liabilities thereof, viz. : (Setting out a statement of assets and liabilities of the firm and liabilities of the decedent, showing the value of his interest to be $25,508.30.)

The petition further represented that there yet remained debts not of record of the estate of the said John Foster to be paid, which would require a portion of the purchase-money of this sale, if it be permitted by the court.

10. That they unite in this petition and in the prayer thereof for the purpose of removing any question which may arise from the fact that several of the said properties have been conveyed to the said John Foster and Samuel M. Kier as tenants in common and not expressly as partners. They further represent that, in addition to the fact that the same were purchased with partnership funds, it would be greatly to the disadvantage of the said John Foster's estate were any of the said properties to be severed from the partnership property, as the heavy expenditures made for cars and car-tracks could not be profitably employed upon a less body of coal than is included in the foregoing property, and such severance would result in the depreciation in value of such cars, tracks, &c.

The prayer was for a decree: "That your petitioners shall make the sale of the said interest of John Foster as aforesaid to the said Samuel M. Kier, upon the terms aforesaid, of all the interest of the said John Foster of and to all the property of the

said Samuel M. Kier and John Foster, hereinbefore described, real and personal, and in all the assets of the said firm, and that they jointly execute deeds of conveyance therefor, whether the same be held as partners or as tenants in common, and that they execute and deliver deeds, in fee simple, clear of dower interest therefor, to the said Samuel M. Kier ; she the said Belle D. Foster being willing to join in said deed for the conveyance of her interest therein as widow of the said John Foster," &c.

On the 14th of September 1872, the court decreed that the administrator should make a private sale of the land to Samuel M. Kier, " of all the interest late of the said John Foster, deceased, of, in and to all the property, real and personal, in said petition mentioned and described, and in and to all the assets of the late firm of Kier & Foster, and that they jointly execute a deed of conveyance in fee simple unto the said purchaser for the same, conveying unto him as well the interest of said decedent, as the interest of the widow and minor children of decedent for the price or sum of $25,508.30, subject to the assumption and payment by said Samuel M. Kier of all the debts of said firm, and all the said John Foster's indebtedness to said firm, including said Foster's individual notes endorsed with the firm name, as they respectively mature ; said Kier also individually to assume and discharge all contracts of the said firm for sales of lots to miners and others, and of all other firm contracts, to be paid as follows, viz. : $5500 in cash upon delivery of the deed, and the remainder in four annual payments of one-fourth each.

" And it appearing that the said sum of $5500, the cash payment, is required for the payment of the debts of said decedent, the court order same to be paid to the said Belle D. Foster, administratrix, upon her giving security, &c. ; and that for the residue of the purchase-money aforesaid, the Samuel M. Kier execute his bond and mortgage as aforesaid to the said W. W. Young, in trust for the widow and children of the said decedent, in the proportions in which they may be respectively interested therein."

The court further decreed : " As to the respective interests of said widow and heirs in the aforesaid purchase-money, the court do adjudge and decree that the same, as between said widow and heirs, shall be considered and treated as the proceeds of real estate, and it is ordered, adjudged and decreed that the said Wm. W. Young shall pay over to the said Belle D. Foster, widow of John Foster, deceased, during her natural life, the interest on the sum of $6669.46, and that he keep the principal sum of $6669.46, during the life of said widow, invested in real estate security, and at her death pay the said principal to the children of the said John Foster, deceased."

Mrs. Foster appealed to the Supreme Court, and assigned for error the part of the decree making distribution.

[Foster's Appeal.]

*M. W. Acheson*, for appellant.—As between the partners themselves, land bought for partnership purposes and paid for out of partnership funds, is partnership property, though conveyed to the partners as tenants in common: Abbott's Appeal, 14 Wright 234; Meason *v.* Kaine, 13 P. F. Smith 335; Kramer *v.* Arthurs, 7 Barr 165; Overholt's Appeal, 2 Jones 222; Hoxie *v.* Carr, 1 Sumn. 172. The property of a partner in partnership land is personal estate and distributable as such upon his decease: Ripley *v.* Waterworth, 7 Ves. 425; Phillips *v.* Phillips, 1 Myl. & K. 649; Broom *v.* Broom, 3 Id. 443; Morris *v.* Kearsley, 2 You. & C. (Ex.) 139; Houghton *v.* Houghton, 11 Sim. 491; Darby *v.* Darby, 3 Drew. 495; Essex *v.* Essex, 20 Beav. 442; Collyer on Partnership, sects. 148, 151; Bisset on Partnership 55, 56; Lindley on Partnership 566. In equity partnership real estate is treated as personalty: Story Eq. Jur., sect. 674; 3 Kent's Comm. 37, 38; Kramer *v.* Arthurs, 7 Barr 165; Lancaster Bank *v.* Myley, 1 Harris 544; Meily *v.* Wood, 21 P. F. Smith 488; Story on Part., sect. 93 and notes.

*T. Ewing*, for appellee, cited in support of the doctrine of the decree, Story on Part., sect. 94, and notes; Buchan *v.* Sumner, 2 Barb. Chan. Rep. 165; Parsons on Part., 383 *et seq.*; Shearer *v.* Shearer, 98 Mass. Rep. 107.

The opinion of the court was delivered, January 5th 1874, by

SHARSWOOD, J.—The question raised upon this record may be thus concisely stated : When real estate has been held as partnership stock—the firm dissolved by the death of one of the members—a settlement and balance ascertained to be due by the surviving partner to the estate of the deceased, is such balance as far as derived from the sale of the realty to be distributed as real or personal estate ? The appellant, who is the widow of John Foster, deceased, who was a copartner of Samuel M. Kier in the firm of Kier & Foster, claims that she is entitled to one-third of the interest of the said Foster, as ascertained by the settlement, absolutely as personal estate; the decree of the court below awards it to her for life only as realty. The firm property at the time of Foster's death was composed both of lands and movables. They were engaged in the mining and selling of coal. The appellant, as administratrix, and William W. Young, as guardian of the minor children of John Foster, presented a petition to the Orphans' Court of Allegheny county, setting forth " that at the time of his death, the said John Foster was an equal partner with Samuel M. Kier, in the firm of Kier & Foster, engaged in the mining and selling of coal, the property of the said firm being situated in the county of Allegheny; that while in many instances the real estate belonging to the said firm was conveyed to them as tenants in com-

mon, yet the same was really held by and purchased with the money of the firm as partnership property; that the said firm of Kier & Foster were largely indebted; that Kier, the surviving partner, had proposed to purchase the interest of Foster for the sum of twenty-five thousand five hundred and eight dollars and thirty cents, he, the said Kier, assuming all the debts and liabilities of the firm; that it would be greatly to the advantage of all interested that the interest of Foster should be sold at private instead of public sale, and the proposition of Kier accepted; that they unite in the petition for the purpose of removing any question which may arise from the fact that several of the said properties have been conveyed to the said John Foster and Samuel M. Kier as tenants in common, and not expressly as partners." Upon this petition the Orphans' Court decreed a private sale to Samuel M. Kier, for the sum named, and that the proceeds of sale be treated and considered as the proceeds of real estate, and accordingly distributing and applying the purchase-money between the widow and heirs of decedent. It is from this latter part of the decree that this appeal is taken.

It has not been and cannot be denied, upon the appraisement and settlement of the partnership debts and assets which accompanies the petition, that after discharging all the liabilities of the firm, the interest of Foster in the lands and real estate which formed the most considerable portion of the stock was fairly represented by the sum agreed to be paid for his entire interest. It is the well-settled rule in marshalling the assets of a decedent, that the personal property is to be first applied in the payment of debts. The general principle is that the personal estate is the proper fund for that purpose, and shall be first applied even to the payment of debts with which the real estate is charged: Keysey's Case, 9 S. & R. 71; Walker's Estate, 3 Rawle 237; Cadbury v. Duval, 10 Barr 273. This is indeed the unbending rule of our statute law, for no order can be made by the Orphans' Court authorizing an executor or administrator to make sale of real estate for the payment of debts unless it shall appear that the personal assets are insufficient for the purpose: Act of February 4th 1834, sect. 20, Pamph. L. 80; Act of March 29th 1832, sect. 31, Pamph. L. 198. It is true that it may often happen that where personal property is used in connection with a colliery or manufacturing establishment, it is very much for the interest of all parties that it should be sold together. That is a difficulty which seems inherent in the subject —equally applicable to the property of any decedent—not peculiar to one whose property is an interest in partnership stock. It seems to be considered as well settled, that where land is a part of partnership stock, it at no time—not even during the continuance of the partnership—becomes personalty in such an unqualified sense as to give one partner an implied power to dispose of the

whole partnership interest in it.   As regards the power of disposition, land held as partnership stock is not subject to the rule which makes each partner the agent of the firm.   Neither can sell more than his own undivided interest, unless he have from the other a sufficient special authority for the purpose.   This seems to be the inevitable result of the Statute of Frauds, both as to legal and equitable interests or estates : Murphy v. Hubert, 7 Barr 423 ; Anderson v. Tompkins, 1 Brock. 457 ; Tapley v. Butterfield, 1 Metc. 515.   It follows that the surviving partner could not sell the real estate in conjunction with the personalty.   When such a difficulty presents itself, it must be met either by a separate sale of the personalty, or in the mode resorted to in this case.   Here we have practically no difficulty growing out of the necessary intermixture of realty and personalty.

For all the purposes of the question before us, this case must therefore be considered the same as if after dissolution by the death of one partner, and payment of all partnership debts, and any balance due the surviving partner, there had remained *in specie*, unconverted, land, the interest of the deceased partner in which is ascertained to be worth $25,508.30.   Is the land thus remaining unconverted and *in specie* to be regarded for the purposes of distribution under the intestate laws, as real or personal ?

This is an entirely new question in this state.   It was supposed to arise in Meily v. Wood, 21 P. F. Smith 488, but this court thought otherwise, and distinctly declined to express any opinion upon it.   A careful examination of all our determinations has failed to discover either decision or even *dictum* bearing upon the point.   Even Abbott's Appeal, 14 Wright 234, which has been pressed upon us as an authority, is inapplicable.   In that case, although the balance of a fund in court arising from the sale of partnership real estate on an execution against the firm, was awarded to the surviving partners as against the claim of one of them in his own right, and as the executor of a deceased partner, to aliquot shares ; yet as stated in the decree, these surviving partners were "settling the business of the firm," and it is said in the opinion by Mr. Justice Read, that " the business of the firm, dissolved by the death of George Abbott, has never been finally settled, and it is alleged by the appellees that the firm is still largely indebted."   We approach the determination of the question, therefore, untrammelled by any authority.   Nor will it be necessary to pass in review the fluctuating and discordant opinions in England and our sister states.   We are saved this labor by the learned and exhaustive opinion of Chancellor Walworth, in Buchan v. Sumner, 2 Barb. Ch. 165.   We are at entire liberty to resolve this important and interesting problem on principle and reason.

Conversion is altogether a doctrine of equity.   In law it has

no being.   It is admitted only for the accomplishment of equitable results.   It may be termed an equitable fiction, and the legal maxim *in fictione juris semper subsistit equitas* has redoubled force in application to it.   It follows of necessity, that it is limited to its end.   Lord Eldon advanced this idea while his mind was evidently laboring and in suspense on the general subject.   In Ripley *v.* Waterworth, 7 Ves. 425, he said : "There is an obvious difference from all the cases, which establish this general principle, that where a person dealing upon his own property only, has directed a conversion for a particular special purpose, or out and out, but the produce to be applied to a particular purpose, when the purpose fails, the intention fails; and this court regards him as not having directed the conversion."   There must be some purpose recognised as lawful to be accomplished by a conversion before equity will permit it to have place.   Surely it will not be pretended that a man could by a mere declaration of record convert his land into personalty, so as to defeat the lien of mortgages, judgments and other encumbrances, elude the provisions of the Statute of Frauds, and change the course of distribution in case of intestacy.   If, however, a trust is created, either by deed or will, with an absolute direction to sell and distribute the proceeds either among creditors or others,- equity considers that as actually done which has been directed to be done, in order to accomplish the lawful intent of the grantor or testator.   If it continued land, subject as such to sale, mortgage and encumbrance by the eventual distributees—the present cestuis que trust—the result aimed at might be defeated, and the intention frustrated.   So where land is, by the agreement of the partners, made partnership stock, it is an out-and-out conversion only, because otherwise the objects of the partnership would be defeated, if the sale, mortgage or encumbrance of his separate interest by one partner could prevent the equity of the other partners to have the partnership property applied to the payment of the partnership debts, and the balances which might be due to them respectively.   When the purpose of conversion is attained, conversion ends, or more accurately, re-conversion takes place. Thus when the sale under the trust is made, the character of personalty does not follow the land into the hands of the purchaser. The proceeds are personalty and are distributed as such among the cestuis que trust, because that was the very object of the conversion.   So with land in partnership when sold by the firm, the land becomes land again in the hands of the purchaser, and the proceeds personalty, but personalty to what extent?   Only to the extent of accomplishing the purposes of the conversion, namely, the equity of the partners to have the joint debts and their own advances paid before any part goes to the other partners or their separate creditors.   In Dyer *v.* Cornell, 4 Barr 359, where, by order of the Orphans' 'Court, the land of minors was

[Foster's Appeal.]

sold for their maintenance and education, it was held that the proceeds, supposing them to retain the character of land, lose that and become personalty on the first transmission, though to an infant. The administrator of the minor was decided to be entitled to the money as money. The court, indeed, were of opinion that the sale *ipso facto* worked a transmutation, but they added, by Coulter, J., "But even admitting that the money in this case bore the impress of real estate, and the inheritable qualities peculiar to lands and houses, in analogy to the case of Lloyd *v.* Hart, 2 Barr 473, for how many generations or descents shall it wear that complexion? It must cease as it mingles with other moneys of the distributee, otherwise uncertainty, confusion and litigation will indelibly mark its character. This court is of opinion that it cannot be carried further than the first descent in any case." The same question is pertinent in regard to the land in the present case. If land, remaining in specie after the partnership is dissolved and wound up, and all the purposes of its conversion answered, is still personal estate, how long is it to remain so? Certainly all the forms of the law as to realty must be observed in its transmission from hand to hand, and shall it not be subject to the lien of judgments in the lifetime, and debts upon the decease of its owner? If not, uncertainty, confusion and litigation will indelibly mark its character. But it may be asked, when is the precise moment of its reconversion? The answer is, the moment the partnership is wound up, either by decree, judgment or agreement, and it is determined that it no longer forms a part of the partnership stock, and is not required for its purposes. In Burr *v.* Sim, 1 Whart. 252, where land was ordered to be converted by will, and the proceeds to be paid to a legatee, it was held that the election by the legatee before any sale, to take the land as land, operated as a new acquisition. It was a purchase of it as land by a surrender of the right which he undoubtedly had to consider it as money. Where, then, a partnership is dissolved, wound up, and completely ended, what can it be but an election of the land as land, and the reconversion of it?

It must be remarked, also, that without the order of the Orphans' Court in this case, the legal title of John Foster to an undivided moiety of the lands could not have been conveyed to Samuel M. Kier. We have seen that this is a well-settled point. If it were not so, the appellant as administratrix might have assigned it. She joined in the application to the court with the guardian. The decree for the private sale was under the provision of the Act of April 18th 1853, sect. 4, Pamph. L. 505; and the fifth section of that act has declared that, in all cases of sale according to its provisions, "The purchase-money * * * shall in all respects be substituted for the real estate sold * * as regards the enjoyment and ownership thereof, after the payment of liens,

[Foster's Appeal.]

and shall be held for or applied to the use and benefit of the same persons, and for the same estate and interest * * * as the real estate sold had been held." Under the express provision of the statute, the proceeds of the real estate sold under this order must be considered as of the same character as the land remaining *in specie* after discharging its liabilities as partnership stock. On the whole, then, we are of the opinion that the appellant was only entitled to an interest for her life, and that the decree of the court below was right.

Decree affirmed, and appeal dismissed at the costs of the appellant.