First and Final Account of Charles H. Welles, Trustee
for Emilie Haeberly, widow of William Robinson and
Henry Armbrust, Guardian of Lena and Amelia Rob-
inson.  Appeal of Emilie Haeberly.

*Partnerships—Dissolution—Intention—Sale of partnership property.*
Dissolution as between partners is a matter of intention, and it may be
shown by sale of the whole property and business, as well as in other ways.

*Partnership—Real estate—Dissolution.*
Land held by partners as partnership assets is to be treated as if it were
personalty to the extent demanded by the purpose with which it is put into
the common stock, but no further.  How far that shall go is largely a mat-
ter of intention, but the presumption is that it shall extend to all the regu-
lar and legitimate uses of the business, and it may be that as to creditors
this presumption must be held conclusive.

Where real estate is purchased by a firm for firm purposes, and by a spe-
cial provision of the articles the partnership is continued after the death of
one of the partners, but finally is dissolved by a sale of all partnership prop-
erty, the interest of the deceased partner in the real estate is to be distri-
buted as real estate and not as personal property.

Equitable conversion is a fiction by which for certain specific purposes,
and to the limited extent required for such purposes, realty may be treated
as personalty, or personalty as realty.

Argued Feb. 21, 1899.  Appeal, No. 238, Jan. T., 1898, by
Emilie Haeberly, from order of C. P. Lackawanna County,
March T., 1898, No. 734, dismissing exceptions to auditor's re-
port.  Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL
and DEAN, JJ.  Affirmed.

Exceptions to auditor's report.  Before EDWARDS, J.

E. C. Newcomb, Esq., auditor, reported the facts agreed upon
to be as follows:

1. Charles Robinson, August Robinson and William Robin-
son, on May 13, 1893, entered into a copartnership, under the
name, style and title of E. Robinson's Sons, for a period of five
years, which agreement is as follows:

"Articles of copartnership, made and concluded this 13th day
of May, in the year of our Lord one thousand eight hundred and
ninety-three, between August Robinson, party of the first part,
Charles Robinson, party of the second part, and William Rob-

inson, party of the third part; all of said parties residing in the city of Scranton, county of Lackawanna, and state of Pennsylvania, are as follows, to wit: (1) The said parties do hereby agree to and with each other to enter into a copartnership, commencing upon the date of this agreement, under and by the name, style and title of E. Robinson's Sons, and to conduct for the term of five years from the date hereof, the business of carrying on the brewery which has heretofore been carried on under the direction of the said parties, under the name of E. Robinson.   (2) Said parties having become the owners, by purchase from their mother, E. Robinson, of all the real and personal property connected with, used in, or belonging to the said brewery property in the city of Scranton aforesaid, do hereby put the same into the said partnership, in equal proportions, so that all of the said property, both real and personal, may be, and they declare the same to be the property of the said partnership and held for partnership purposes. . . . (9) Should either one of the parties hereto die before the expiration of five years from the date of these presents, the business shall be carried on until the full expiration of five years from the date hereof by the surviving partners, together with the personal representatives of the deceased partner, for the benefit of the said surviving partners and the estate of the deceased partners, in equal proportions as the same benefit would accrue had not the said death occurred. . . ."

2. E. Robinson, the mother of Charles, August and William Robinson, conveyed to her three sons by deed dated May 13, 1893, the brewery property, in which the business of the partnership was transacted, for a stated consideration of $1.00. The said property was acquired, as stated in the articles of copartnership, fully set forth in the first paragraph hereof, for the purpose of being used as a brewery plant by the said partnership, and was so used until the sale to the Pennsylvania Central Brewing Company.

3. William Robinson, one of the said copartners, died September 15, 1893, leaving to survive him a widow, Emilie Robinson, now intermarried with H. H. Haeberley, and a daughter, Edna Robinson, born early in 1893 (before the death of William Robinson), of the body of the said Emilie Robinson, and two daughters, Amelia Robinson, born August 25, 1881, and Lena

Robinson, born December 25, 1879, of a prior deceased wife of the said William Robinson.

4. Henry Armbrust was duly appointed by the orphans' court of Lackawanna county guardian of the said Lena, Amelia and Edna Robinson, October 23, 1893.

5. Edna Robinson, child of said William and Emilie Robinson, died February 12, 1894, unmarried, intestate and without issue. Henry Armbrust is still the guardian of said Amelia Robinson and Lena Robinson.

6. The Pennsylvania Central Brewing Company offered to purchase from the said Charles Robinson, August Robinson, Henry Armbrust, guardian of Amelia and Lena Robinson, and Emilie Haeberly, the widow of William Robinson, deceased, the real estate of E. Robinson's Sons, used in the brewery business, together with the manufactured beer, barrels, hops, malt and material in the brewing business for the price or sum of $950,000, to be paid for in the following manner, namely: One third cash, one third common stock of the Pennsylvania Brewing Company and one third preferred stock, and drawing dividends of eight per cent.

7. Said Henry Armbrust, guardian of Amelia and Lena Robinson, petitioned the orphans' court for leave to convey the interest of his said wards of said property and to join Charles Robinson and August Robinson, and Emilie Haeberly in making sale of said brewery plant, material and personal property used in connection with said brewery business, and after due consideration made, it was decreed authorizing the said guardian to so sell; the said petition and decree are made a part of this agreement of facts as though fully set forth herein.

8. On October 7, A. D. 1897, the deed was made to the Pennsylvania Central Brewing Company for the said consideration of $5.00, and other good and valuable considerations, and the following amounts paid therefor:

| | |
|---|---|
| Cash . . . . . . . . | $376,688 |
| Bonds of the Pennsylvania Central Brewing Company . . . . . . | 90,000 |
| Common stock of the Pennsylvania Central Brewing Company . . . . . | 316,666 |
| Preferred stock of the Pennsylvania Central Brewing Company . . . . . | 166,700 |

The said deed is recorded in Lackawanna county, and is made a part of this agreement of facts, as though fully set forth herein.

9. As shown by the books of the partnership, the cost of the lands, buildings and machinery, included in the sale to the Pennsylvania Central Brewing Company was $219,500 of which amount $77,127.54 had been invested in such lands, buildings and machinery out of the earnings of the firm subsequently to the death of William Robinson. It is left to the auditor to find from the agreed facts and such other evidence as may be submitted to him, what proportion of the $950,000 purchase money may fairly be considered to represent the value of such lands, buildings and machinery.

10. On January 28, 1896, Charles Robinson and August Robinson conveyed to Emilie Haeberly and Henry Armbrust, guardian of Amelia and Lena Robinson, a certain lot on Seventh street in the city of Scranton, being lots Nos. 9, 10 and part of 11, in block No. 28, $132\frac{7}{10}$ feet wide in front, and 150 feet deep, for an express consideration of $1.00 and placed the deed on record April 22, 1897, in the recorder's office of Lackawanna county, without the knowledge or consent of either Emilie Haeberly or Henry Armbrust, guardian. The conveyance was stated to be made to the parties "in the respective proportions which they would be entitled to take said land under the intestate laws of this commonwealth were the title of the same vested in William Robinson at and immediately before his decease." The first knowledge of the grantees of the making or recording of this deed was in September, 1897. The building and dwelling house upon said lot was begun during the lifetime of William Robinson and finished after his death, and the entire cost thereof was paid out of the earnings of the partnership.

11. The said dwelling house and lot were wholly paid for by August Robinson and Charles Robinson out of the earnings of the partnership after the death of William Robinson, and the cost thereof, as stated on the books, $35,167.94, was charged against the interest of the said William Robinson and his estate on the books of the partnership.

12. Emilie Haeberly, widow, as aforesaid, and Henry Armbrust, guardian, as aforesaid (said guardian with permission of the orphans' court, formal decree being made), sold and con-

veyed the said lot and building on Seventh street to Charles Robinson and August Robinson for the consideration of $22,500, cash, by deed dated November 24, A. D. 1897, which said deed is made a part of this agreement of facts as though fully set forth herein.

13. In making sale of the interest of William Robinson, deceased, in the brewery, and in selling the said dwelling house and lot, it was understood and agreed between the parties that the interest of the widow and guardian of the minor children of William Robinson in said property could not be determined except by adjudication of some court of competent jurisdiction, and it was agreed that the sale should be made and the questions of proportions or distributions should be submitted to court in some proper manner, and to that end the entire amount of purchase money, stocks and bonds derived from the sale of the brewery property, being one third of $950,000, and the purchase money of the dwelling house and lot, $22,500, were placed in the hands of Charles H. Welles, as trustee, for distribution under the supervision of the court.

14. The question whether the interest of the said William Robinson's estate in the real estate, held as aforesaid by the copartnership, was personal property or real estate, and the proportion of the interests of his widow and heirs in the same was first raised by the representatives of the Pennsylvania Central Brewing Company, in connection with the purchase of the copartnership property, and they declined to accept title unless Henry Armbrust as guardian should secure the consent of the orphans' court of Lackawanna county to sell the interests of his wards, without designating the proportion of the purchase money which said wards should be legally entitled to receive; and it was agreed that such consent should be obtained without committing any of the parties to a legal admission or agreement as to the nature of the estate so granted.

15. The period fixed by the articles for the continuance of the copartnership has not yet expired; no formal agreement of dissolution has been executed, nor have all of its assets been distributed.  All of the firm debts have been paid except a mortgage of $30,000, held by Elizabeth Robinson, and there are remaining assets consisting of real and personal property, and money, notes and judgments due the firm.  By the sale to

the Pennsylvania Central Brewing Company, above recited, the copartnership divested itself of all the property and appliances necessary for the prosecution of the business for which it was formed.

16. The value of the said lands, buildings and machinery is held by the trustee, and should be distributed in cash and securities in the following proportions: Cash, .43798 per cent. Common stock of the Pennsylvania Central Brewing Company, .36822 per cent. Preferred stock of the Pennsylvania Central Brewing Company, .1938 per cent.

17. The above amount of $22,500 is held and should be distributed in cash.

18. The trustee has already paid to Emilie Haeberly $50,000 in cash, and $15,000 in bonds, and to Henry Armbrust, guardian, $55,000 in cash, and $15,000 in bonds.

19. Since the death of William Robinson and of his daughter, Edna, there have been several distributions of profits of the partnership business, all of which have been paid in the following proportions: five ninths to Emilie Haeberly, two ninths to the guardian of Emily Robinson and two ninths to the guardian of Lena Robinson.

20. Very soon after the commencement of the copartnership, at the request of William Robinson, a certain lot, being part of the land conveyed by Elizabeth Robinson· to August, Charles and William, heretofore referred to, was set apart to William for the erection thereon of his residence, and the said William had plans prepared for the erection and construction of said residence, and the same was begun in his lifetime and continued to completion after his death, and, when completed, was occupied by his widow and children. No deed, however, had been given in the lifetime of William, but, after his death, Charles and August, joined by their respective wives, made and placed upon record the deed referred to in the tenth agreement of fact in this case.

21. The fifteenth paragraph above is qualified as follows, to wit: That so far as it refers to a mortgage for $30,000 held by Elizabeth Robinson, the same is agreed to by the attorney for Mrs. Emilie Haeberly as an agreement with reference to a fact without any admission of her consent or agreement to the giving of the mortgage or the validity thereof.

In addition to the foregoing, I find the following:

### ADDITIONAL FACTS.

22. Coupled with the sale of the brewery plant and its equipment, the parties conveyed the good-will of the brewery business of E. Robinson's Sons to the Pennsylvania Central Brewing Company, intending thereby to terminate and abandon the business for which the partnership was formed, and since the sale no attempt has been made or purpose manifested to ever resume the partnership business.

23. The cost of the real estate so conveyed was $219,500, one third of which, together with the further sum of $22,500, derived from the sale of the dwelling house property of William Robinson, may be fairly considered in the distribution as representing real estate.

24. The $30,000 mortgage held by Elizabeth Robinson, mentioned in paragraph fifteen above, is shown by the record to be the mortgage of August Robinson upon property entirely distinct from the brewery plant, and not included in the sale thereof. This mortgage is not shown by the evidence to be a liability of the partnership.

As applicable to the foregoing facts, I find the following:  ·

### CONCLUSIONS OF LAW.

1. So far as the fund for distribution is composed of stocks and bonds it should be distributed in kind.

2. So far as the fund represents real estate, it should be distributed as such to the widow and issue of William Robinson, according to the course of descent.

3. As to the share of Edna Robinson, deceased child of William Robinson, the surviving mother, Emilie Haeberly, is entitled to take the same, both real and personal, in fee.

4. Emilie Haeberly is therefore entitled to take five ninths of the personal estate absolutely, two ninths of the real estate absolutely and three ninths of the real estate for life.

5. Lena Robinson is entitled to take absolutely two ninths of both the real and personal property.

6. Amelia Robinson is entitled to two ninths of both real and personal property absolutely.

7. Upon the death of Mrs. Haeberly, Lena and Amelia Robinson are entitled to have in equal shares the three ninths of the real estate, held by Mrs. Haeberly for life.

8. The percentage of the fund derived from the sale of the brewery plant which should be distributed as real estate is .215725 per cent.

*Errors assigned* were in dismissing exceptions to auditor's report.

*James H. Torrey*, for appellant.—It is generally conceded that the question whether partnership real estate shall be deemed absolutely converted into personalty for all purposes or only converted pro tanto for the purpose of partnership, equities may be controlled by the expressed or implied agreement of the partners themselves, and that where by such agreement it appears that it was the intention of the partners that the land should be treated and administered as personalty for all purposes, effect will be given thereto: Darrow v. Calkins, 154 N. Y. 503; Meily v. Wood, 71 Pa. 488; Du Bree v. Albert, 100 Pa. 487; Abbott's App., 50 Pa. 234.

At the time of the sale of the brewery plant in this case, October, 1897, all three of these essential elements of reconversion were wanting. The firm was not dissolved; for by its terms it was to continue for five years, which had not yet expired. The business of the firm had not been settled; for there had been no final accounting between the partners. The debts had not been fully paid, for there remained the debt of $17,000 or $30,000, as might be ultimately determined.

*Everett Warren*, with him *Edward N. Willard* and *Henry A. Knapp*, for appellee.—A sale of all the property of a partnership, the management or operation of, or the dealing in or with reference to which constituted its sole business effects its dissolution, as does its total destruction: Wells v. Ellis, 68 California, 243; Blaker v. Sands, 29 Kansas, 551; Whitton v. Smith, 1 Freeman (Miss.), 231; Kennedy v. Porter, 109 N. Y. 526; Thompson v. Bowman, 6 Wallace, 316; Smith v. Vanderburg, 46 Ill. 34; Buchan v. Sumner, 2 Barb. Ch. 165; Foster's App., 74 Pa. 391.

When the objects for which the fiction of a conversion was adopted have been accomplished the principle of equitable conversion has no further application, and the remainder of the

property, or its proceeds in case of sale to settle partnership affairs, is real estate, and as such descends to the heirs at law: Yeatman v. Woods, 6 Yerg. 20; Wilcox v. Wilcox, 13 Allen, 252; Whitman v. Boston and Maine R. R. Co., 3 Allen, 133; Patterson v. Blake, 12 Ind. 438; Smith v. Wood, 1 N. J. Eq. 82; Buckley v. Buckley, 11 Barb. 44; Fairchild v. Fairchild, 64 N. Y. 471; Houston v. Stanton, 11 Ala. 420; Collumb v. Read, 24 N. Y. 505.

It has, also, been held that "the widow of a deceased partner will be entitled to dower in his share of any real estate of the firm not required for the payment of debts and the adjustment of such equitable claims:" Campbell v. Campbell, 30 N. J. Eq. 417; Uhler v. Semple, 20 N. J. Eq. 288; Shearer v. Shearer, 98 Mass. 107; Tillinghast v. Champlin, 4 R. I. 173.

OPINION BY MR. JUSTICE MITCHELL, May 1, 1899:

The auditor found that the term of the partnership under its articles had not expired, there had been no formal dissolution or settlement of accounts, there were still some undistributed assets, and one unpaid debt, a mortgage on real estate belonging to the partnership, though held in the name of an individual partner, yet, notwithstanding these circumstances, he found as a fact that the firm had sold its entire plant, equipment and good-will, and by common consent ended its business. This finding was confirmed by the court, and we see no reason to question its soundness. The auditor's conclusion that the case is "analogous to that of a partnership which has dissolved by mutual consent, settled its accounts, paid its debts, and has a surplus in land," is the logical deduction from the facts. Dissolution, as between the partners, is a matter of intention, and it may be shown by the sale of the whole property and business, as well as in other ways: 17 Am. & Eng. Ency. of Law, 1100.

The question then arises, had the real estate returned to its normal character, or did it still continue in its equitable status of personalty so that its proceeds were distributable as such? In dealing with questions of this kind it is important to keep constantly in mind what equitable conversion really is, a fiction by which for certain specific purposes, and to the limited extent required for such purposes, realty may be treated as personalty or personalty as realty. As said in Wentz's Appeal,

126 Pa. 541, "the money never is real estate, in law any more than in fact, but for certain purposes, and within certain limits it is treated as if it was real estate. . . . The whole doctrine is the creation of equity for a specific purpose, and when that purpose is accomplished, the rule ceases to operate. So far therefore from the money actually becoming real estate, and requiring a positive act of reconversion to restore it to its natural character of money, it never is real estate, and is only treated as such within a limit," and quoting SHARSWOOD, J., in Foster's Appeal, 74 Pa. 397, "when the purpose of conversion is attained conversion ends."

Land held by partners as partnership assets is to be treated as if it were personalty to the extent demanded by the purpose with which it is put into the common stock, but no further. How far that shall go is largely a matter of intention, but the presumption is that it shall extend to all the regular and legitimate uses of the business, and it may be that as to creditors this presumption must be held conclusive. It is frequently said that during the partnership it is "an out and out conversion," but the phrase is unfortunate, and apt to mislead. Even in a leading case in which it is used, the limited sense in which it is to be taken is shown elsewhere in the opinion, "where land is a part of partnership stock, it at no time—not even during the continuance of the partnership—becomes personalty in such an unqualified sense as to give one partner an implied power to dispose of the whole partnership interest in it. As regards the power of disposition, land held as partnership stock is not subject to the rule which makes each partner the agent of the firm:" Foster's Appeal, 74 Pa. 391:

The realty involved in the present case was put into the partnership assets for use by the firm in the business, and so long as the business continued it was liable to be treated for all necessary business purposes as part of the general stock. But its status as personalty even during the continuance of the business was temporary and restricted, and the moment the necessity for so treating it ceased, its quasi character ceased and it resumed its normal position as land. To extend the operation of the conversion so as to alter the devolution of title would be to pervert an equitable fiction from the very purpose of its invention. If the firm had been dissolved by the death of Wil-

liam Robinson, as it would have been except for the special pro-
vision of the articles of partnership, his share in the settlement
of the assets as to the part represented by this fund, would have
passed to his heirs as real estate.  The effect of the dissolution
by bringing the entire business to an end was exactly the same.

As to the dwelling house of William Robinson, a fortiori it
was real estate.  It had never been anything else.

Decree affirmed.