# Poeta v. Jaffe

*Steven J. Fram,* for plaintiffs
*David Smith,* for defendants.

SHEPPARD, *J.,* October 2, 2001—Defendants, Richard P. Jaffe, Robert P. Krauss, Barry J. Frank and Harvey N. Shapiro have filed preliminary objections to the amended complaint of plaintiffs, John Poeta and Beth Stern-Fleming. For the reasons set forth, this court will enter a contemporaneous order overruling the objections.

## BACKGROUND

This dispute arises from the breakup of the law firm of Mesirov Gelman Jaffe Cramer & Jamieson LLP. The plaintiffs' basic allegations are set forth in greater detail in this court's earlier opinion of May 30, 2001.[1] The amended complaint adds the following assertions:

• At meetings of Mesirov's partners on April 3 and 4, 2000, Jaffe advised the partners that Mesirov was conducting "merger" negotiations with several other law firms.[2] The partners agreed that the firm could not continue operations in the event that a merger with one of these firms was not consummated and approved a plan to merge with another firm or to liquidate the firm, if a merger could not be effected quickly.[3] According to the

1. Available at http://courts.phila.gov/cptcvcomp.htm.

2. According to the complaint, these firms were Blank Rome Comisky & McCauley L.L.P., Pepper Hamilton and Wolf, Block Schorr and Solis-Cohen.

3. As there was no specific merger plan, the court infers that the partners expressed approval for the general principle that a merger between Mesirov and another firm should take place.

plaintiffs, this constituted an affirmative vote to dissolve Mesirov, and the partners took steps toward winding up the firm.

• On April 25, 2000, the plaintiffs and Jaffe, acting in his capacity as an authorized representative of the firm's executive committee, agreed to a May 31, 2000 date for the plaintiffs' departure from the firm.[4] This complied with section 9.1 of Mesirov's partnership agreement, which generally requires at least 30 days written notice of an intent to withdraw.

• On May 2, 2000, Jaffe demanded that Poeta leave Mesirov as soon as possible. In mid-May 2000, Jaffe advised Stern-Fleming that she should leave Mesirov on Friday, May 26, 2000, as it was unnecessary for her to continue working for the two remaining business days of May 30 and 31. Neither plaintiff agreed to any modification of the April 25 agreement.

• The partners announced on May 25, 2000 that Mesirov had agreed to "merge" with Schnader Harrison Segal Lewis LLP.[5] In accordance with the terms of the merger, all of Mesirov's assets, subject to its liabilities, were transferred to Schnader on May 31, 2000.

• According to the plaintiffs, if the firm was not dissolved by the partners' actions on April 3 and 4, 2000, it was dissolved either by the attempted expulsion of Poeta on May 2 or by the merger on May 31, 2000.

---

4. This is referred to as the "April 25 agreement."

5. This transaction is referred to as the "merger." The plaintiffs allege that Schnader was not one of the firms with whom Mesirov was considering as of April 4, 2000.

The amended complaint sets forth four counts: a breach of fiduciary duty claim against all defendants requesting an equitable accounting and the appointment of a receiver; two counts for breach of fiduciary duty, one by each plaintiff; and a claim for breach of the agreement by both plaintiffs. Defendants contend that the amended complaint is not legally sufficient.

## DISCUSSION

Plaintiffs have corrected the defects found in the original complaint filed in this matter, and the amended complaint's allegations sufficiently plead that the firm was dissolved prior to the plaintiffs' departure. In addition, the amended complaint alleges breaches of fiduciary duty by each defendant. In summary, plaintiffs may proceed with their claims.

### I. *The Plaintiffs' Claims for Breach of Fiduciary Duty and Breach of the Duty of Good Faith and Fair Dealing Are Legally Sufficient*

The crux of the debate over the sufficiency of the plaintiffs' claims is whether the plaintiffs remained partners until the firm was dissolved, giving rise to fiduciary duties owed to them throughout the winding-up process. Based on the allegations in the amended complaint, this court submits that the plaintiffs remained partners until the firm's dissolution.

Partners generally owe each other a fiduciary duty to act in good faith during the life of the partnership and throughout the partnership's wind-up period, which follows dissolution and precedes termination. 15 Pa.C.S.

§8334; *In re LaBrum & Doak LLP*, 227 B.R. 391 (Bankr. E.D. Pa. 1998) (citing, inter alia, 15 Pa.C.S. §§8331, 8334(a), 8352; *Clement v. Clement*, 436 Pa. 466, 260 A.2d 728 (1970)). As noted in the prior opinion, "no ongoing duty is generally owed to partners who withdraw prior to a partnership's dissolution." *Poeta v. Jaffe*, November term 2000, no. 1357, slip op. at 5-6 (C.P. Phila. May 30, 2001) (Sheppard, J.) (citing, inter alia, *Zebley v. Ostheimer*, 368 Pa. 21, 81 A.2d 546 (1951); *Hansel v. Hansel*, 300 Pa. Super. 548, 556-57, 446 A.2d 1294, 1298-99 (1982); *Finkelstein v. Security Props. Inc.*, 888 P.2d 161, 167 (Wash. Ct. App. 1995); Allen R. Bromberg & Larry E. Ribstein, *Bromberg & Ribstein on Partnership* (1991) §6.07(a)(7)). Because there are no allegations of misconduct by the defendants before May 2000, this requires that the plaintiffs establish that the firm's dissolution was effected prior to their departure.

Under Pennsylvania law, the dissolution of a partnership may be caused by any of the following:

"(1) Without violation of the agreement between the partners:

"(i) By the termination of the definite term or particular undertaking specified in the agreement.

"(ii) By the express will of any partner when no definite term or particular undertaking is specified.

"(iii) By the express will of all the partners who have not assigned their interests or suffered them to be charged for their separate debts, either before or after the termination of any specified term or particular undertaking.

"(iv) By the expulsion of any partner from the business bona fide in accordance with such a power conferred by the agreement between the partners.

"(2) In contravention of the agreement between the partners, where the circumstances do not permit a dissolution under any other provision of this section, by the express will of any partner at any time.

"(3) By any event which makes it unlawful for the business of the partnership to be carried on or for the members to carry it on in partnership.

"(4) By the death of any partner.

"(5) By the bankruptcy of any partner or the partnership.

"(6) By decree of court under section 8354 (relating to dissolution by decree of court)." 15 Pa.C.S. §8353.

Plaintiffs assert that they did not depart from the firm until May 31, 2000, and that at least one of the following events led to the dissolution of the firm:

• The April 4, 2000 consensus of the partners that the firm had to merge with one of the three candidate firms or liquidate;

• Jaffe's May 2, 2000 demand that Poeta leave the firm immediately; or

• The May 25, 2000 announcement of the merger.[6]

According to the plaintiffs, these actions constituted either an affirmative vote of the partners to dissolve the firm as permitted by the agreement, or the express will of the partners to dissolve the firm possibly in contravention of the agreement, or Poeta's expulsion, each of which would have caused the firm's dissolution.

------

6. These actions would implicate section 8353(1)(ii), (1)(iii), (1)(iv) and (2).

## A. The April 4, 2000 Meeting Did Not Constitute an Affirmative Vote of the Partners To Dissolve the Firm

The plaintiffs first argue that the April 4, 2000 consensus constituted an affirmative vote of the majority of the partners, causing the dissolution of the firm in accordance with the agreement and section 8353(1)(ii). The court cannot concur.

Section 2.1 of the agreement states that the firm "can be dissolved by the affirmative vote of a majority of the partners," with the withdrawal of a partner being of no effect in the absence of a vote agreement at section 2.1. According to the amended complaint, at the April 4, 2000 meeting the partners "approved the plan to merge with another firm, or if the merger could not be effected quickly, to liquidate the firm." Amended complaint at ¶53. To the extent that this constituted a vote on dissolution, however, it was conditioned on a merger not going through and could not have been effective immediately. Moreover, the merger removed the conditions on which the partners approval of dissolution was based. Thus, this vague agreement to dissolve at some undetermined point in the future if certain events did or did not occur cannot be regarded as an affirmative vote to dissolve the firm.

The plaintiffs' bald assertions that the firm was dissolved on April 4, 2000 are of no moment. While a complaint may set forth allegations of fact, the alleged legal effect of the underlying events may be disregarded. *Wagner v. Waitlevertch,* 774 A.2d 1247, 1254 (Pa. Super. 2001) ("[i]n reviewing the grant of preliminary objections, we need not consider the pleader's conclusions of law"). Here, plaintiffs' own description of the April 4,

2000 meeting contradicts their proposed legal conclusion that dissolution occurred.

## B. Poeta's Alleged Expulsion From the Firm Did Not Cause its Dissolution

The next event proposed by the plaintiffs as the date of dissolution is May 2, 2000, the day on which Jaffe "demanded that Poeta leave the Mesirov firm as soon as possible." Amended complaint at ¶71. Under section 8353(1)(iv), the expulsion of a partner in accordance with the terms of the partnership agreement causes the partnership's dissolution. The rationale for treating the remaining partners as a unit, if expulsion is *not* undertaken in accordance with the agreement, includes the belief that "the concept of expulsion from a firm implies that the firm continues." *Bromberg & Ribstein* §7.11(d).

Section 9.8 of the agreement allows the firm's executive committee to recommend that a partner be removed "for cause," and provides for the removal of a partner upon the affirmative vote of 75 percent of the partners. There is no allegation that the partners undertook the steps required by section 9.8. Indeed, it appears that the request that Poeta leave the firm "as soon as possible" came from Jaffe alone, without any consent of any other partners. Amended complaint at ¶71. This does not comport with section 8353's requirement that an expulsion resulting in dissolution be in accordance with the terms of the partnership agreement.

The plaintiffs' reliance on *Beasley v. Cadwalader, Wickersham & Taft,* 728 So.2d 253 (Fla. Dist. Ct. App. 1998), in which the court held that the defendant's ex-

pulsion of the plaintiff in violation of the partnership agreement caused the defendant's dissolution, is misplaced. While a handful of courts have found that an unauthorized expulsion of a partner causes the dissolution of the partnership,

"Other remedies are seemingly more consistent with the U.P.A. First, the court can hold that such an expulsion results in a judicial decree of dissolution at the instance [sic] of the excluded partner. The consequences of such a dissolution will depend on whether the excluded partners was [sic] also guilty of misconduct. Second, the partners may be able to obtain judicial dissolution based on the wrongful conduct of the partner to be expelled, in which event they would have the right to buy that partner's interest and continue the partnership. . . ." *Bromberg & Ribstein* §7.02(f)(2). (internal references and footnotes omitted)[7]

Here, the amended complaint does not request Mesirov's dissolution, and the court cannot consider granting such relief. As a result, it cannot be said that Poeta's alleged expulsion caused the firm's dissolution on May 2, 2000.

---

7. In *In re Crutcher,* 209 B.R. 347 (Bankr. E.D. Pa. 1997), it appears that the court attempted to straddle the fence on this issue. On the one hand, the court omitted the second half of section 8353(1)(iv), stating only that "expulsion of any partner from the business" was grounds for dissolution. 209 B.R. at 352. In the following sentence, however, the court noted that "[s]everal cases expressly state and apply the rule that the exclusion of one partner by another from the management of the partnership business or possession of the partnership property is undoubtedly ground for dissolution by a court of equity." *Id.* (citations, brackets and quotation marks omitted) Thus, it is difficult to determine whether the *Crutcher* court embraced the reasoning of *Beasley* or followed the path recommended by Bromberg and Ribstein.

## C. Mesirov May Have Been Dissolved by the Express Will of the Partners as Indicated by the Transfer of the Firm's Assets and the Engagement of the Partners by Schnader

Finally, plaintiffs assert that the partners dissolved the firm by their express will. The court is persuaded that the amended complaint alleges events to support the conclusion that it was the partners' express will to dissolve the firm prior to the plaintiffs' withdrawal. Thus, the fiduciary duties owed to the plaintiffs continue through the firm's winding up.[8]

A partnership may be dissolved at any time by the express will of one or all of the partners, either as permitted by or in contravention of the partnership agreement. See *Girard Bank v. Halley,* 460 Pa. 237, 243, 332 A.2d 443, 446 (1975) ("an expression of a will to dissolve is effective as a dissolution even if in contravention of the agreement"). There is no clear definition of what constitutes the "express will" of a partner or partners under Pennsylvania law. In *Account of C.H. Welles, Haeberly's App.,* 191 Pa. 239, 43 A. 207 (1899), the Pennsylvania Supreme Court held that, while the intent of the partners is key, a partnership's dissolution "may be shown by the sale of the whole property and business, as well as in other ways." See also, *Vollet v. Pechenik,* 380 Pa. 342, 110 A.2d 221 (1955) (finding that partnership had been dissolved where partnership assets had been sold

---

8. The amended complaint asserts that the plaintiffs' remained partners "until the end of the day on May 31, 2000." Amended complaint at ¶90.

and lease of premises explicitly stated that the partnership had completed its business and was winding up its affairs). Treatises and cases from foreign jurisdictions support this point. See *e.g., Maryland Cas. Co. v. Bedsole & Shetley,* 228 F. Supp. 521, 526 (M.D. La. 1964) ("upon transfer of all [partnership] assets the partnership ceased to exist"); *Gonseth v. K & K Oil Co.,* 439 S.W.2d 18, 20 (Mo. Ct. App. 1969) (upon the transfer of all partnership assets, the partnership "ceased to exist"); *Bromberg & Ribstein* §7.02(e)(2) (to determine when partners have expressed the will to dissolve the partnership, a court may rely upon the transfer of the partnership's assets or the partnership business). Cf. *Hooper v. Yoder,* 737 P.2d 852, 858 (Colo. 1987) ("when partners organize a corporation to operate the business of the partnership and transfer the assets to the corporation, . . . such action usually reflects the express will of the parties that the partnership be dissolved").

The plaintiffs point to the current state of the firm, including the allegations that the current "partners" do no work on behalf of the firm[9] and that the firm has no assets. They also highlight language in Mesirov's Internal Revenue Service Form K-1, which states that the firm's assets were transferred to Schnader on May 31, 2000 and refers to the "former partners of Mesirov." These allegations indicate that Mesirov may have been dissolved by the express will of the partners by May 31, 2000, at the latest, and that the plaintiffs' supposed mem-

---

9. Plaintiffs contend that this may violate the agreement, including those provisions requiring partners' incomes from the practice of law to be paid to the firm and prohibiting non-partnership business activity.

bership in the firm until then creates fiduciary duties that are owed to them through the winding-up process.

## II. *The Amended Complaint Presents Claims Against All Four Defendants*

Defendants also urge that the amended complaint does not allege breaches of fiduciary duty by each defendant. The court disagrees. According to the amended complaint, the defendants, as a group, conveyed Mesirov's assets to Schnader in exchange for the benefit of membership in Schnader and guaranteed allocations for 2000. Amended complaint at ¶¶83-85. In addition, the defendants have allegedly refused to give the plaintiffs an accounting of the financial status of the firm and have failed to give the plaintiffs the allocation to which they are due. *Id.* at ¶¶96-97, 100-101, 108-109, 115. The fact that the amended complaint includes additional allegations against Jaffe, Krause and Shapiro does not minimize these infractions, which constitute specific breaches of each defendant's fiduciary duty to the plaintiffs. Accordingly, the plaintiffs may proceed against all four defendants.

## CONCLUSION

The amended complaint alleges sufficient facts to support the plaintiffs' action, and the objections are overruled.

## ORDER

And now, October 2, 2001, upon consideration of the preliminary objections of defendants Richard P. Jaffe, Robert P. Krauss, Barry J. Frank and Harvey N. Shapiro,

to the amended complaint, the plaintiffs' response in opposition, and in accord with the opinion being filed contemporaneously with this order, it is hereby ordered that the preliminary objections are overruled. The defendants are directed to file an answer to the amended complaint within 22 days of the date of this order.